Shauck, C. J.
On the first day of June, 1905, Phillip E. Gilbert, a taxpayer of Montgomery county, filed a petition in the court óf • common .pleas of that county alleging the facts necessary to entitle him to bring the suit in the capacity of a taxpayer, and praying that the execution of a contract which had been entered into between the appropriate county officials and James R. Thomas, whereby the latter, for a stipulated compensation to be paid by the county, should 'perform the duties of a tax inquisitor in bringing taxable property of the county upon the duplicate for taxation, should be perpetually enjoined, it *357 being alleged that the payment of the stipulated compensation by the county was unlawful because the contract was not authorized by the terms of any constitutional statute. - An answer having been filed, the cause was tried on the pleadings and the evidence, and on July 7, 1905, a judgment was entered in the court of common pleas dismissing the petition. The cause was then appealed to' the circuit court where it was tried de novo upon the pleadings and the evidence. That court being of the opinion that the legislation by which the contract was supposed to be authorized was unconstitutional because repugnant to ' Section 26 of Article II of the Constitution of the state which ordains that all laws of- a general nature shall have uniform operation throughout the state, rendered judgment for the plaintiff, perpetually enjoining Thomas from performing any work and from receiving any compensation under the contract. Thomas thereupon filed a petition in error here for the reversal of the judgment of the circuit court. At the last term the case was fully argued and considered upon the question of the constitutional validity of the legislation intended to authorize contracts of this character. We reached the conclusion that it is invalid because repugnant to Section 26 of Article II of the Constitution. The case is reported in 74 Ohio St., 403, where the constitutional and statutory provisions involved are fully set out. Upon the announcement of our conclusion counsel for Thomas communicated to us their desire to be heard upon the proposition that in view of previous decisions of this court respecting the validity of such legislation the present conclusion that it is invalid does *358 not justify the denial of compensation from the date of the contract. To afford opportunity for hearing upon that question our mandate was withheld and the causes set for argument with Gilfilan v. The State, ex rel. Seymour, Prosecuting Attorney.
The latter cáse originated in a suit by the prosecuting attorney in the court of common pleas of Franklin county to enjoin the payment to Gilfillan of compensation for'services to be performed by him as tax inquisitor for Franklin county under contracts executed between him and the appropriate officers of the county, it being alleged, among other things, that said contracts were invalid because the legislation by which they were supposed to be authorized was repugnant to Section 26 of Article II of the constitution. After a final judgment in the court of common pleas the cause was appealed to the circuit court, where it was tried de novo upon the pleadings and the evidence. In that court it was determined that the legislation was invalid for the reason stated; but in recognition of Gilfillan’s right to rely upon former decisions of this court that this legislation is valid it was held that he was entitled to compensation for services rendered under the contract until this court decided similar legislation invalid, and that date it fixed at May 11, 1899, when this court announced its conclusion in State, ex rel. Wilmot et al. v. Buckley et al., 60 Ohio St., 273, where we held that laws relating to the subject of popular elections are of a general nature, and must be of uniform operation throughout the state. The separate statements of conclusions of fact and of law made by the *359 circuit court embrace other questions which need not be stated here, as they relate to the interpretation of the contract and its application to facts shown in the evidence.
In both cases the present inquiry assumes that the legislation referred to is void for repugnancy to Section 26 of Article II of the constitution' as decided in Thomas et al. v. State, ex rel. Gilbert, 74 Ohio St., 403. We have to ascertain to what extent, in view of the previous decisions of this court, the plaintiffs in error are entitled to rely upon their contracts, notwithstanding the invalidity of the legislation. In one of the briefs there is much reliance upon the act of May 9, 1902 (95 O. L., 444, Bates’ Statutes, Section 22&-1), entitled “An act to carry into effect the intention both of officials and parties respecting certain county and municipal instruments and proceedings.” In view of the abiding character-of the restraints imposed by the constitution upon legislative action, one does not readily accept the cohclusion that legislative acts which they have made void may receive validity from subsequent legislative acts. The inquiry will be most effectively promoted .by adverting at once to the constitutional principles which are involved, for to them it must at last come. The doctrine invoked by the plaintiffs in error is founded on the provisions- of the tenth section of the first article of the Constitution of the United States that no state shall pass any law impairing the obligation of contracts, and that of Section 28 of Article IT of the constitution of this state that “the general assembl)1- shall have no power to pass laws impairing the obligation -of contracts.” The courts have not failed to observe the significance *360 of these provisions of the organic laws for the preservation of the inviolability of contract's. To give to them the effect intended the courts have accorded full recognition to the doctrine that when contractual obligations are involved, and to the extent which may be necessary to their enforcement, the interpretation which is placed upon a constitutional provision by the highest tribunal appointed for that purpose is to be regarded as a part of the provision. In numerous authoritative and well-considered cases this doctrine has been stated in varying terms but to the same import. It was stated with care and precision by Chief Justice Waite in Douglass v. County of Pike, 101 U. S., 677, as follows:
“The true rule is to give a change of judicial construction in respect to a statute, the same effect in its operation on contracts and existing contract rights that would be given to a legislative enactment; that is to say, make it prospective but not retroactive. After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is, to all intents and purposes, the same in its effect on contracts, as an amendment of Jhe law by means of a legislative enactment.”
The reporter’s abstract of the briefs will show that this doctrine has been- recognized in numerous cases, applying it to decisions respecting the validity of statutes as well as to their construction. It was distinctly recognized by this court in Lewis, Auditor, v. Symmes et al., 61 Ohio St., 471, though its application was there de *361 nied because the case involved no contractual obligation. In City of Cincinnati v. Taft et al., 63 Ohio St., 141, the doctrine was recognized and applied in support of the binding obligation of contracts executed under favor of legislation which this court had previously held to be constitutionally valid, although in the case cited it was admitted to be void under our later decisions. Two distinctions should receive attention. This doctrine may be invoked as a matter of right by all suitors who are in a position to assert the binding obligation of contracts. It is, therefore, broadly distinguishable from the doctrine which courts and writers usually and properly treat' under the head of stare decisis, which involve only considerations of public policy and propriety, however important they may be. The provision of the federal constitution is that no state shall pass any law 'impairing the obligation of contracts., while the express restriction of the constitution of the' state is upon the general assembly.,. The duty of the courts of the state would be obvious from a consideration of the purposes in view. It becomes clearer when attention is given to the provision of the federal constitution, for that would not be more clearly violated by an act of the legislature impairing the obligation of a contract than by judicial decision impairing the oblh gation of contracts authorized by laws of which the decision of the court of last resort affirming their validity had become a part.
Upon principle this doctrine may be regarded! as entirely consistent with the commonly accepted doctrine that an unconstitutional act of the legislature is not a law, but a nullity. It is in accord *362 anee with the general rule that all who assume the validity of legislation do so at their peril. As to them, contracts purporting to be authorized by void legislation have no obligation to be impaired by judicial decisions which apply to them the tests prescribed by the constitution. But that contracts executed under, favor of acts which the highest court ■ of the state has declared valid are themselves valid as against subsequent decisions to the contrary, though the acts may not be valid, seems clear for the reasons already stated, and the distinction is clearly implied by the terms in which the courts have stated the doctrine which the plaintiffs in error invoke. The terms of the doctrine require a consideration of the decisions of this court respecting legislation of this character prior to the commencement of these suits. In State, ex rel., v. Cappeller, 39 Ohio St., 207, the court had to determine the proper interpretation of statutes relating to the assessment and collection of taxes and the payment for services rendered in that behalf, and the constitutional validity of the Act of April 14, 1880, entitled “An act to more fully secure the taxation of real and personal property in Ohio and for levying taxes thereon according to its true value” (77 O. L., 205). The act assumed to authorize such contracts as these and to provide for the ratable deduction of money paid for services rendered in that behalf from the several funds in the treasury of the county. Although the title of the act comprehended the entire state, the first section by artifice limited its operation to Hamilton county. The opinion shows that the court did not regard the act as having a uniform operation throughout the state, but it appears *363 to have been regarded as not a law of a general nature because it did not operate throughout the state. Analysis of the opinion in that case is not necessary for the third section of the syllabus prepared by the court as the authoritative statement of the points decided is: “Section i of the act of April 14, 1880 (77 O. L.; 205), is not in conflict with either Section 26 or 28,, Article II of the Constitution.” The legislative act upon which the plaintiffs in error relied when rendering a part of the service under the present contracts was before this court at the January ^ Term, 1891, in State, ex rel., v. Crites, Auditor, 48 Ohio St., 142, when it gave the utmost assurance possible to those who contemplated entering into such contracts, it being stated, in the syllabus that “the act of April 10, 1888 (85 O. L., 170), entitled ‘An act to secure a fuller and better return of property for taxation and to prevent omissions of property from the tax duplicate’ is constitutional, and a contract made pursuant to its provisions is legal and valid.” The former decisions of this court, therefore, clearly justify the resort by counsel for the plaintiffs in error to the doctrines stated in support of their conclusion that these contracts are not entirely destitute of validity in view of the circumstances under which tíiey were executed, although the legislation may be wholly invalid.
To this extent the judgment of the circuit court in Giliillan v. State, ex rel. Seymour, is in accordance with the views we have expressed. But in that court it was thought that this court had withdrawn its authority for reliance upon the validity of the legislation involved on May 9, 1899, *364 when it decided State, ex rel. Wilmot et al., v. Buckley et al., 60 Ohio St., 273. It is true that in that case, and in other cases arising at about the same time, the consideration of this court was given to the constitutional provision here involved, namely, that laws of a general nature must nave uniform operation throughout the state, but neither the case specially referred to nor any other involved in the general consideration dealt with the present subject of legislation, and 'they could not have determined that it is general and therefore within the constitutional requirement. Those cases do not make plainer than it had been ever since the adoption of the constitution that laws which are of that nature must have that operation, though some of them held laws to be of that nature which had not been so regarded in previous decisions. The changes in decisions in all the cases referred to in fhe present inquiry resulted from the present acceptance of the view that a general subject of legislation'does not change its character because a legislative act respecting it may, by the general assembly, be given only a local operation. The court of last resort in the state having in the most authoritative manner affirmed the validity of this legislation, the assurance so given could be withdrawn only by a contrary decision with respect to the same legislation or like legislation upon the same subject. The doctrine recognized as necessary to preserve the obligation of contracts does not permit the denial of compensation to the plaintiffs in error until their right thereto was challenged by the original petitions filed in the court of common pleas in the cases, which resulted in the judgments here re *365 viewed. Other questions discussed by counsel in the case of Gilfillan v. State, ex rel. Seymour, are, we think, foreclosed by the record, and the judgments will be modified only in the respect indicated.
The judgments of the circuit court will be vacated and the causes remanded to that court with instructions to enter such modified judgment as will permit payment to the plaintiffs in error of the stipulated compensation for the services which they rendered before the filing of the original petitions in these causes.

Judgment accordingly.

Price, Crew, Summers, Spear and Davis, JJ., concur.